UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TEVA PHARMACEUTICALS INTERNATIONAL GMBH and TEVA PHARMACEUTICALS USA, INC., | * * * | |
| Plaintiffs and Defendants-in-Counterclaim, | * * | |
| | * | Civil Action No. 18-cv-12029-ADB |
| v. | * * | |
| ELI LILLY AND COMPANY, | * * | |
| Defendant and Plaintiff-in-Counterclaim. | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO TRANSFER OR STAY PENDING *INTER PARTES* REVIEW**

BURROUGHS, D.J.

In this patent infringement suit, Teva Pharmaceuticals International GmbH ("Teva GmbH") and Teva Pharmaceuticals USA, Inc. ("Teva USA" and together with Teva GmbH, "Teva") allege that Eli Lilly and Company ("Lilly") has infringed claims in nine patents owned by Teva related to a product marketed under the brand name Ajovy™, which contains the active ingredient fremanezumab and is used to treat migraines. [ECF No. 1 ("Compl.")]. Lilly has brought counterclaims against Teva, seeking declaratory judgments that its product marketed under the brand name Emgality™, which contains the active ingredient galcanezumab and is also used to treat migraines, does not infringe Teva's patents and that Teva's patents are invalid. [ECF No. 17]. Before the Court is Lilly's Motion to Transfer, or If Not Transferred, Then to Stay This Litigation Pending *Inter Partes* Review ("Motion to Transfer or Stay") [ECF No. 18]. After consideration of the parties' respective positions and taking into account the *inter partes* review ("IPR") proceedings, the Motion to Transfer or Stay is <u>GRANTED</u> in part and <u>DENIED</u>

in part.  The case will not be transferred out of the District of Massachusetts, but it will be stayed

pending the IPR proceedings that have been instituted.[1]

## I.   BACKGROUND

### A.   Factual and Procedural Background

Teva GmbH is a Swiss limited liability company with a principal place of business at

Schlüsselstrasse 12, Jona (SG) 8645, Switzerland.  [Compl. ¶ 8].  Teva USA is a Delaware

corporation with a principal place of business in Pennsylvania.  [Id. ¶ 9].

Lilly is an Indiana corporation with a principal place of business in Indiana.  [Id. ¶ 10].

Lilly maintains a "Cambridge Innovation Center" at 450 Kendall Street, Cambridge, MA 02142,

where a subset of Lilly's research and development scientists and engineers work.  [Id. ¶¶ 39–

43].

This action is the third in a series of cases involving Teva and Lilly's dispute over their

migraine treatment drugs.  See Complaint, Teva Pharms. Int'l GmbH v. Eli Lilly & Co., No. 17-

cv-12087 (D. Mass. Oct. 24, 2017) ("Teva I"); Complaint, Teva Pharms. Int'l GmbH v. Eli Lilly

& Co., No. 18-cv-10242 (D. Mass. Feb. 6, 2018) ("Teva II").[2]

Teva's corporate affiliate, Labrys Biologics, Inc. ("Labrys"), has conducted research on a

biologic product to treat migraines with an active ingredient called fremanezumab.  [Compl. ¶ 3].

Fremanezumab is a humanized monoclonal antibody that targets calcitonin gene-related peptide

("CGRP"), which is a molecule that plays a role in migraine headaches.  [Id.].  Labrys' research

---

[1] Lilly's request to stay the action pending the decisions on whether to institute IPRs is denied as moot.  See [ECF No. 19 at 26].

[2] Both of these earlier cases were dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the Court's finding that there was "no controversy of sufficient immediacy and reality" at the time the complaints were filed.  See Order, Teva I, No. 17-cv-12087 (D. Mass. Sept. 27, 2018), ECF No. 42 (dismissing both Teva I and Teva II).

resulted in innovations related to fremanezumab that are protected by U.S. Patents Nos. 8,586,045 ("'045 Patent"); 8,597,649 ("'649 Patent"); 9,266,951 ("'951 Patent"); 9,340,614 ("'614 Patent"); 9,346,881 ("'881 Patent"); 9,884,907 ("'907 Patent"); 9,884,908 ("'908 Patent"); 9,890,210 ("'210 Patent"); and 9,890,211 ("'211 Patent") (collectively, the "Patents-in-Suit").  [Id. ¶ 4].

The Patents-in-Suit include six patents for compositions of matter and three patents for methods of treatment.  The patents for compositions of matter cover:

- "[a]n isolated human or humanized anti-CGRP antagonist antibody with a binding affinity ($K_D$) to human α-CGRP of 50 nM or less as measured by surface plasmon resonance at 37º C,"[3] [ECF No. 1-21 at 71 ('649 Patent)];

- a "human or humanized monoclonal anti-CGRP antagonist antibody that (1) binds human α-CGRP and (2) inhibits cyclic adenosine monophosphate (cAMP) activation in cells" along with the pharmaceutical composition of the same, [ECF No. 1-22 at 73 ('951 Patent)];

- a "human or humanized monoclonal anti-CGRP antagonist antibody that preferentially binds to human α-CGRP as compared to amylin" along with the pharmaceutical composition of the same, [ECF No. 1-23 at 74 ('614 Patent)];

- a "human or humanized monoclonal anti-CGRP antagonist antibody that (1) binds human α-CGRP and (2) inhibits human α-CGRP from binding to its receptor as measured by a radioligand binding assay in SK-N-MC cells," [ECF No. 1-24 at 73 ('881 Patent)];

---

[3] α-CGRP is one of two types of CGRP that exists in humans; the other type is β-CGRP.  [ECF No. 1-21 at 21].  An anti-CGRP antagonist antibody is defined as "an antibody that is able to bind to CGRP and inhibit CGRP biological activity and/or downstream pathway(s) mediated by CGRP signaling."  [ECF No. 1-20 at 27].

- a humanized monoclonal anti-CGRP antagonist antibody comprising "two human IgG heavy chains, each heavy chain comprising three complementarity determining regions (CDRs) and four framework regions, wherein portions of the two heavy chains together form an Fc region; and two light chains, each light chain comprising three CDRs and four framework regions; wherein the CDRs impart to the antibody specific binding to a CGRP consisting of amino acid residues 1 to 37 of SEQ ID NO:15 or SEQ ID NO:43,"[4] [ECF No. 1-34 at 78 ('210 Patent)]; and,

- a humanized monoclonal anti-CGRP antagonist antibody comprising "two human IgG heavy chains, each heavy chain comprising three complementarity determining regions (CDRs) and four framework regions, wherein portions of the two heavy chains together form an Fc region; and two light chains, each light chain comprising three CDRs and four framework regions; wherein the CDRs impart to the antibody specific binding to a CGRP consisting of amino acid residues 1 to 37 of SEQ ID NO:15 or SEQ ID NO:43, and wherein the antibody binds to the CGRP with a binding affinity ($K_D$) of about 10 nM or less as measured by surface plasmon resonance at 37º C, [ECF No. 1-35 at 78 ('211 Patent)].

The patents for methods of treatment include:

- a method for reducing the incidence of or treating at least one vasomotor symptom, selected from the group consisting of hot flush, a migraine with or without an aura, hemiplegic migraine, cluster headache, migrainous neuralgia, chronic headache, and tension headache, by administering a human or humanized anti-CGRP antagonist

---

[4] SEQ ID NO:15 refers to the amino acid sequence of human α-CGRP, and SEQ ID NO:43 refers to the amino acid sequence of human β-CGRP.  [ECF No. 1-32 at 64].

antibody, [ECF No. 1-20 at 70 ('045 Patent)];

- a method for treating headache in individuals by administering an effective amount of a humanized monoclonal anti-CGRP antagonist antibody, comprised of "two human IgG heavy chains, each heavy chain comprising three complementarity determining regions (CDRs) and four framework regions, wherein portions of the two heavy chains together form an Fc region; and two light chains, each light chain comprising three CDRs and four framework regions; wherein the CDRs impart to the antibody specific binding to a CGRP consisting of amino acid residues 1 to 37 of SEQ ID NO:15 or SEQ ID NO:43," [ECF No. 1-32 at 78 ('907 Patent)]; and,

- a method for treating headache in individuals by administering an effective amount of a humanized monoclonal anti-CGRP antagonist antibody, comprised of "two human IgG heavy chains, each heavy chain comprising three complementarity determining regions (CDRs) and four framework regions, wherein portions of the two heavy chains together form an Fc region; and two light chains, each light chain comprising three CDRs and four framework regions; wherein the CDRs impart to the antibody specific binding to a CGRP consisting of amino acid residues 1 to 37 of SEQ ID NO:15 or SEQ ID NO:43, and wherein the antibody binds to the CGRP with a binding affinity ($K_D$) of about 10 nM or less as measured by surface plasmon resonance at 37º C,"  [ECF No. 1-33 at 76 ('908 Patent)].

Labrys assigned the Patents-in-Suit to Teva on September 19, 2016.  [Compl. ¶ 4].

Currently, Teva GmbH owns the Patents-in-Suit, and Teva USA holds an exclusive license to the

Patents-in-Suit.  [Id. ¶¶ 8–9].[5]

On October 16, 2017, Teva[6] submitted a Biologics License Application ("BLA") to the

U.S. Food and Drug Administration ("FDA") that sought approval to market fremanezumab for

the treatment of episodic and chronic migraines.  [Id. ¶ 4].  On October 24, 2017, Lilly

announced that it had submitted a BLA for its galcanezumab biologic product for the prevention

of migraine.  [ECF No. 17 at 75 ¶ 11].  Like fremanezumab, galcanezumab also targets CGRP.

[Compl. ¶ 5].

On September 19, 2018, Teva received FDA approval to market fremanezumab under the

brand name Ajovy™.  [Id. ¶ 4].  On September 27, 2018, Lilly obtained FDA approval to market

galcanezumab under the brand name Emgality™.  [Id. ¶ 6].

Also on September 27, 2018, Teva filed this lawsuit.  See [id.].  On November 2, 2018,

Lilly answered the Complaint, asserted counterclaims, and filed its Motion to Transfer or Stay.

[ECF Nos. 17, 18].  Teva opposed the Motion to Transfer or Stay on December 4, 2018.  [ECF

No. 26].  Lilly filed a reply brief on December 21, 2018, and Teva filed a sur-reply on January 4,

2019.  [ECF Nos. 29, 33].  The parties submitted eight letters thereafter, which advised the Court

of the status of the IPR petitions and provided additional argument on the request to stay the

---

[5] The '045 Patent, '649 Patent, '951 Patent, '614 Patent, and '881 Patent were issued to Labrys as assignee in 2013 and 2016.  See [ECF Nos. 1-20, 1-21, 1-22, 1-23, 1-24].  The '907 Patent, '908 Patent, '210 Patent, and '211 Patent were issued to Teva GmbH as assignee in 2018.  See [ECF Nos. 1-32, 1-33, 1-34, 1-35].

[6] Teva Branded Pharmaceuticals Products R&D, Inc. submitted the BLA, and then transferred the BLA to Teva USA on March 22, 2018.  [Compl. ¶ 4].

case.  See [ECF Nos. 34, 35, 37–42].  The Court held oral argument on March 5, 2019.  [ECF No. 36].

### B.    Patent Trial and Appeal Board Decisions

On August 8, 2018, Lilly filed six IPR petitions with the Patent Trial and Appeal Board of the United States Patent and Trademark Office (the "Board") alleging that the '649 Patent, '951 Patent, '614 Patent, '881 Patent, '210 Patent, and '211 Patent were invalid as obvious. [Compl. ¶ 32]; see [ECF Nos. 35-1, 35-2, 35-3, 37-1, 37-2, 37-3].  On October 1, 2018 Lilly filed two more IPR petitions alleging that the '907 Patent and the '908 Patent were invalid as obvious. See [ECF Nos. 39-2, 39-3].  On October 4, 2018 Lilly filed an IPR petition alleging that the '045 Patent was invalid as obvious.  See [ECF No. 39-1].

The Board has instituted IPR proceedings for all nine Patents-in-Suit.  Specifically, on February 21, 2019, the Board issued institution decisions granting Lilly's petitions for IPR of every challenged claim in the '614 Patent, the '951 Patent, and the '881 Patent.[7]  [ECF No. 35]. On February 25, 2019, the Board issued institution decisions granting Lilly's petitions for IPR of the '210 Patent, the '211 Patent, and the '649 Patent.[8]  [ECF No. 37].  Finally, on April 3, 2019, the Board issued institution decisions granting Lilly's petitions for IPR of the '045 Patent, the '907 Patent, and the '908 Patent.[9]  [ECF No. 39].

---

[7] The Board concluded that there was a reasonable likelihood that at least one of claims 1–7 and 15–20 of the '614 Patent and at least one of claims 1–6 and 14–19 of the '951 Patent is unpatentable as obvious.  [ECF Nos. 35-1, 35-2].  The Board also concluded that there was a reasonable likelihood that claims 1–6 and 14–19 of the '881 Patent are unpatentable as obvious. [ECF No. 35-3].

[8] The Board concluded that there was a reasonable likelihood that at least one of claims 1–15 of the '210 Patent and at least one of claims 1–15 of the '211 Patent is unpatentable as obvious. [ECF Nos. 37-1, 37-2].  The Board also concluded that there was a reasonable likelihood that claims 1–9 of the '649 Patent are unpatentable as obvious.  [ECF No. 37-3].

[9] The Board concluded that there was a reasonable likelihood that at least one of claims 1, 3, 4, 8–17, 19, 20, and 24–31 of the '045 Patent and at least one of claims 1–18 of the '907 Patent is

## II.   MOTION TO TRANSFER

### A.   Legal Standard

In a patent infringement suit, venue is proper in the district where the defendant resides or where the defendant has allegedly committed acts of infringement and has a regular and established place of business.  See 28 U.S.C. § 1400(b).  A corporate defendant resides in "any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."  28 U.S.C. § 1391(c).

Under 28 U.S.C. § 1404(a) ("Section 1404"), a district court, "for the convenience of parties and witnesses, in the interest of justice," may transfer any civil action from a proper venue to any other district in which the case could have been brought.  28 U.S.C. § 1404(a).  "When considering a motion to transfer venue, courts consider both private and public interest factors, including '1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake.'"  Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-cv-14010-ADB, 2015 WL 4275181, at *4 (D. Mass. July 15, 2015) (quoting Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012)).  To warrant transfer, the party seeking to litigate in another forum must establish that "considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum."  Iragorri v. Int'l Elevator Inc., 203 F.3d 8, 12 (1st Cir. 2000).

---

unpatentable as obvious.  [ECF Nos. 39-1, 39-2].  The Board also concluded that there was a reasonable likelihood that claims 1–18 of the '908 Patent are unpatentable as obvious.  [ECF No. 39-3].

B.      Discussion

The parties do not dispute that venue in the District of Massachusetts is proper under the patent venue statute as a district in which Lilly has allegedly committed acts of infringement and has a regular and established place of business.[10]   See [ECF No. 19 at 11; ECF No. 26 at 13]. Nevertheless, Lilly requests that this Court transfer the case to the Southern District of Indiana, which it contends is more convenient for the parties and witnesses, has a more significant connection to the issues in the case, and is favored by public and state interests.  [ECF No. 19 at 11–21].  Teva does not dispute that the Southern District of Indiana is a venue in which this case may have been brought, but argues that transfer is not appropriate because its choice of forum is entitled to deference and because the District of Massachusetts is more convenient, more connected to the issues in this case, and favored by the interests of the Commonwealth of Massachusetts.  [ECF No. 26 at 11–20].  Although there may be alternative appropriate venues in which this case could have been brought, the private and public interest factors of the Section 1404 analysis do not "strongly favor" transferring this case away from the District of Massachusetts and do not outweigh the presumption in favor of Teva's selected forum.

As an initial matter, "a plaintiff enjoys some degree of deference for his original choice of forum."  Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007).  The greatest degree of deference is afforded to plaintiffs who select their home forum.  Piper Aircraft Co. v. Reyno, 454

---

[10] Lilly maintains its "Cambridge Innovation Center" in Cambridge, MA, where a subset of Lilly's research and development scientists and engineers work.  [Compl. ¶¶ 39–43].  The Innovation Center is a "regular and established place of business."  See 28 U.S.C. § 1400(b).  In addition, alleged acts of infringement were committed in Massachusetts, including but not limited to sales of the allegedly infringing product and the phase 2 clinical trials of the allegedly infringing product.  See id.; see also [ECF No. 1 ¶ 6; ECF No. 26-2; ECF No. 29 at 8–9 (conceding involvement of Cambridge-based Arteaus in development of galcanezumab and clinical trials, but arguing that involvement was minimal)].

U.S. 235, 256 (1981).[11] Courts afford less deference to a plaintiff's choice of venue, however, when the plaintiff is a nonresident of its selected venue. See Friends of Animals v. Phifer, No. 15-cv-30011, 2015 WL 1943898, at *3 (D. Mass. Apr. 29, 2015) (collecting cases). Here, Teva's choice of forum is due limited deference because it has not selected its home forums of Delaware or Pennsylvania, but such deference still weighs against transfer. See id. (concluding that plaintiff's choice of non-home forum weighed slightly against transfer); Harpel v. Nicholson, No. 12-cv-10280-RWZ, 2012 WL 4965335, at *6 (D. Mass. Oct. 17, 2012) (concluding that plaintiff's choice of non-home forum was entitled to "less deference" but still outweighed defendant's case for transfer).

Two of the factors to be considered are neutral: the law to be applied and state or public interests. Federal patent law will be applied regardless of the forum. See [ECF No. 19 at 11; ECF No. 26 at 20]. Public interest factors considered in a Section 1404 analysis include "administrative difficulties flowing from court congestion," "local interest in having localized controversies decided at home," and "the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 n.6 (2013) (quoting Piper Aircraft, 454 U.S. at 241 n.6). Here, there is no indication that courts in this district are any more or less congested than courts in the Southern District of Indiana; there is no "localized controvers[y]" at issue; and, this is not a case brought under diversity jurisdiction.

---

[11] Although Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981), is a *forum non conviens* case, courts routinely apply it in Section 1404 cases. See, e.g., Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 500 (D. Mass. 2018); Atari v. United Parcel Serv., Inc., 211 F. Supp. 2d 360, 362 (D. Mass. 2002).

The remaining three factors—the relative convenience of the parties, the convenience of the witnesses and location of documents, and the connection between the forum and the issues—do not outweigh the presumption in favor of Teva's selected forum. Teva's choice of forum was restricted by 28 U.S.C. § 1400(b), which designates appropriate venues for patent infringement suits, and by Lilly's seven U.S. locations. Under Lilly's view, only one of the seven possible venues allowed under the statute, Lilly's headquarters' location in Indiana, would be appropriate. That outcome is not contemplated by the patent venue statute, which allows a plaintiff to sue alleged infringers anywhere the infringer maintains a place of business and the alleged infringement has occurred, rather than restricting a plaintiff to the district where the alleged infringer's headquarters is located. In addition, Lilly has not made any showing that Indiana would be more convenient than Massachusetts for Teva. See Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp., 394 F. Supp. 2d 299, 312 (D. Mass. 2005) (noting that on motion to transfer, "court must consider the convenience of both parties"). Any convenience Lilly might gain from litigating in Indiana based on Lilly's outsized presence in Indiana does not outweigh the presumption in favor of Teva's selected forum. Accordingly, the Court denies Lilly's request under Section 1404 to transfer this action to the Southern District of Indiana.

## III.     MOTION TO STAY

### A.     Legal Standard

The Court has the inherent power to manage its docket by staying proceedings, including pending IPR. Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). The decision to grant a stay is discretionary. ACQIS, LLC v. EMC Corp., 109 F. Supp. 3d 352, 356 (D. Mass. 2015). Courts typically consider three factors when deciding a motion to stay patent litigation while an IPR is pending:

> (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

Id. (quoting SurfCast, Inc. v. Microsoft Corp., No. 2:12-cv-00333, 2014 WL 6388489, at *1 (D. Me. Nov. 14, 2014)).[12]  The analysis considers the totality of the circumstances, and "the inquiry is largely case specific."  Id. (citation omitted).  As described below, the Court concludes that two factors weigh in favor of a stay and one factor weighs slightly against a stay.

### B.    Stage of the Litigation

The first factor concerns "the stage of litigation, including whether discovery is complete and a trial date has been set."  SurfCast, 2014 WL 6388489, at *1.  As a general rule, "[t]he earlier the stage of proceedings, the greater the reason to grant a stay."  Id. at *2.  Lilly argues that the "infancy" of this case and its pre-discovery posture favor a stay.  See [ECF No. 19 at 23].  Teva concedes that the litigation "is in its early stages," but maintains that Lilly has been on notice that Teva would be enforcing its patent rights concerning its migraine therapy since October 2017.  [ECF No. 26 at 26].

Notwithstanding the fact that this action is the third in a series of related actions, the case remains in a nascent stage.  Lilly's request for a stay came shortly after the action was initiated. The Court has not yet set a schedule for discovery; no Markman hearing has taken place; summary judgment motions have not been filed; no trial has been scheduled.  The parties have been focused on the instant motion practice and, as far as the Court is aware, have not yet begun discovery.  The lion's share of this litigation lies ahead of both the parties and the Court.  It is

---

[12] Because the IPR process remains relatively new, "courts have analyzed motions for stay using the framework applicable to motions to stay pending reexamination by the Patent Office." Canatelo, LLC v. Avigilon Corp., No. 12-cv-01431, 2014 WL 2533407, at *1 (D.P.R. June 5, 2014).

common for courts to stay proceedings that are at this early stage pending the resolution of IPRs.

See, e.g., KAZ USA, Inc. v. E. Mishan & Sons, Inc., No. 13-cv-40037-TSH, 2014 WL 3501366,

at *4 (D. Mass. July 9, 2014) (finding that case in "very early stages" "weigh[ed] heavily in

favor of granting a stay" where "[l]ittle discovery had occurred and the parties had not yet

exchanged claim constructions); Bos. Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.,

No. 13-cv-13111-FDS, 2014 WL 2048436, at *2, *4 (D. Mass. May 16, 2014) (finding that

"very early stage" of litigation weighed in favor of a stay where discovery had not begun and no

dates had been set for a Markman hearing or trial).  But see ADA Sols., Inc. v. Eng'rd Plastics,

Inc., 826 F. Supp. 2d 348, 352 (D. Mass. 2011) (adopting position that even in cases in the early

stages of litigation, "this factor does not compel a stay but rather is one of measure of whether it

is prudent to stay the litigation or not").  Thus, the first factor weighs in favor of a stay.

### C.      Simplification of the Issues

The second factor assesses "whether a stay will simplify the issues in question and the

trial of the case."  SurfCast, 2014 WL 6388489, at *1.  "A stay no doubt simplifies the issues

where all of the patents-in-suit are subject to IPR."  SCVNGR, Inc. v. eCharge Licensing, LLC,

No. 13-cv-12418-DJC, 2014 WL 4804738, at *10 (D. Mass. Sept. 25, 2014) (citing

Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp., No. SACV 12-21-JST JPRX,

2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012)).

Lilly argues that granting a stay will significantly simplify the issues in this case because

the IPRs "could cancel the majority of patents and claims at issue in this litigation."  [ECF No.

19 at 23–24].  Teva responds that a stay will not simplify the issues in this case because the IPR

proceedings are unlikely to resolve "all issues" between the parties.  [ECF No. 40 at 1].[13]  Both

parties rely on various statistics related to historical IPR proceedings to support their respective

arguments about whether challenged claims are more likely to be cancelled or to survive.  See

[ECF No. 19 at 24; ECF No. 40 at 2; ECF No. 41 at 2].

The Court agrees with Lilly that the IPRs are likely to simplify the issues in this case,

regardless of the specific outcomes of the IPRs, because all nine Patents-in-Suit are now subject

to IPR proceedings.  "[T]he *IPR* ruling will eliminate the need for any trial if all claims are

cancelled and, even if most or all of the claims survive *IPR*, the [Board's] order will facilitate

trial by providing the court with the [Board's] expert opinion and likely will clarify the scope of

the claims remaining for trial."  Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp., No. 3:15-

cv-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016).  "Further, 'if all the

asserted claims survive [IPR], the case could still be simplified because the defendant[ ] would

be bound by the estoppel provisions for [IPR] and thus could not raise before this court any

arguments that they raised or reasonably could have raised at the PTO.'"  Id. (quoting Verinata

Health, Inc. v. Ariosa Diagnostics, Inc., No. 12-cv-05501 SI, 2014 WL 121640, at *2 (N.D. Cal.

Jan. 13, 2014)).[14]  Thus, the second factor weighs in favor of a stay.

---

[13] Teva's briefing, which was submitted before the Board had issued institution decisions,
focused on the fact that the IPRs had not yet been instituted.  See [ECF No. 26 at 24].  Following
institution of the nine IPRs, the parties submitted three letters to the Court that address, *inter
alia*, the issue of whether the resolution of the IPRs will simplify the issues.  See [ECF Nos. 40,
41, 42].  The Court considers these letters in its assessment of the simplification of the issues
factor because they represent the parties' most current and concrete understanding of how the
IPRs will impact this litigation.

[14] The Court expects Lilly not to attempt to relitigate any invalidity arguments that are or could
be addressed in the IPRs.

### D.    Prejudice to the Nonmoving Party

The third factor weighs "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." SurfCast, 2014 WL 6388489, at *1.  Because "staying any case pending an IPR risks delaying the final resolution of the dispute," the "potential for delay does not, by itself, establish *undue* prejudice." SCVNGR, 2014 WL 4804738, at *9 (quoting Neste Oil OYJ v. Dynamic Fuels, LLC, No. 12-cv-00662, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013)) (emphasis in original).  A party seeking to avoid a stay must establish undue prejudice separate from the potential for delay, such as a dilatory motive on the part of the party seeking a stay, unavailability of legal remedies once the stay is lifted, or the parties' relationship as direct competitors in the marketplace.  See Irwin Indus. Tool Co., 2016 WL 1735330, at *4 ("Courts are more likely to find undue prejudice when the parties are direct competitors." (quoting Autoalert, Inc. v. Dominion Dealer Sols., LLC, No. SACV 12-1661-JST (JPRx), 2013 WL 8014977, at *2 (C.D. Cal. May 22, 2013))); ACQIS, LLC, 109 F. Supp. 3d at 358 (finding that party's decision to not seek preliminary injunction undermined its claim of undue prejudice because it would have its legal and equitable remedies available when the stay lifted); SCVNGR, 2014 WL 4804738, at *9 (noting that a party's dilatory motive can weigh against a stay).

The parties each interpret the undue prejudice factor to weigh in their favor for different reasons.  On the one hand, Lilly contends that a stay will not prejudice Teva because Teva seeks only money damages and has not sought a preliminary injunction.  See [ECF No. 19 at 25].  Lilly further argues that a stay would not impede the timely enforcement of Teva's rights.  See [ECF No. 29 at 12].  On the other hand, Teva responds that its status as a direct competitor of Lilly establishes undue prejudice and causes a clear tactical disadvantage.  [ECF No. 26 at 23]; see also [ECF No. 33 at 7].  Teva further contends that the length of time required for the Board to

issue decisions, which can sometimes extend beyond a year, will cause undue prejudice and counsels against a stay.  [ECF No. 26 at 23–24].

The thrust of the prejudice inquiry is harm to the non-moving party.  Cf. ACQIS, 109 F. Supp. 3d at 358 (requiring demonstration of actual prejudice).  Stays are disfavored in cases involving direct competitors because "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."  Neste Oil OYJ v. Dynamic Fuels, LLC, No. 12-cv-01744, 2013 WL 3353984, at *3 (D. Del. Jul 2, 2015) (quoting Neste Oil OYJ, 2013 WL 424754, at *2); see also Verinata Health, 2014 WL 121640, at *3 ("Infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.  Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude.").

Here, Teva and Lilly are direct competitors in the market for migraine treatments, which includes up to 38 million potential consumers who experience migraines.  [ECF No. 26 at 22]; [Compl. ¶ 1]; see also [ECF No. 29 at 11–12].  At oral argument on March 5, 2019, however, the parties advised the Court that there are other competitors in the migraine market.  Although the presence of other firms in the market decreases the likelihood of prejudice to Teva, the fact that Teva and Lilly are direct competitors in the market for migraine treatment weighs against a stay. See Neste Oil OYJ, 2013 WL 3353984, at *3 ("The presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the [the non-moving party].").

The conclusion that Teva and Lilly are direct competitors, however, does not end the inquiry. Where relief from the injuries flowing from the alleged infringement will not be

impaired by a stay, the undue prejudice factor is not overborne by the fact of the parties' business relationship alone.  See Studer Prof'l Audio GmbH v. Calrec Audio Ltd., No. 2:12-cv-02278, 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (finding that a stay would not unduly prejudice plaintiff, even where the parties were direct competitors, because plaintiff would retain "all of their 'legal and equitable remedies'" when the stay was lifted (quoting MonoSol Rx, LLC v. BioDelivery Scis. Int'l, Inc., No. 10-cv-05695, 2012 WL 762501 at *10 (D.N.J. Mar. 7, 2012))). Here, Teva seeks money damages for infringement and declaratory judgments that Lilly's conduct was infringing.  See [Compl. ¶¶ 97–231].  Teva has not sought a preliminary injunction. There is no indication that the imposition of a stay at this time will cause Teva to lose any presently available legal remedies, such as money damages or the opportunity to obtain a declaratory judgment.  Further, "[a]ny delay to [a party's] recovery of monetary damages is not meaningful where the prevailing party in patent cases may recover prejudgment interest." SCVNGR, 2014 WL 4804738, at *9.

Finally, the Court finds no evidence of dilatory motive on Lilly's part in the timing of its filing for IPRs.  Teva alleges that Lilly's improper motive is demonstrated by the fact that Lilly waited ten months from the filing of the Teva I complaint before filing its first IPR petitions in August 2018.  [ECF No. 26 at 26].  Lilly's IPR petitions, however, were filed timely, and the initial petitions filed in August were submitted well-within the statutory period allowed for filing.  See 35 U.S.C. § 315(b) (disallowing IPR petitions filed "more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent"). Further, Lilly requested a stay at the outset of the litigation on the same day that it filed its responsive pleading.  See [ECF No. 19].

Thus, upon considering possible undue prejudice and tactical disadvantage to Teva, the Court concludes that the third factor weighs slightly against a stay.

## IV.      CONCLUSION

Accordingly, the Motion to Transfer or Stay is <u>GRANTED</u> in part and <u>DENIED</u> in part. The case will not be transferred out of this district and is hereby stayed pending resolution of the nine IPRs.

**SO ORDERED.**

April 22, 2019                                          /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE