IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TEVA PHARMACEUTICALS INTERNATIONAL GMBH and TEVA PHARMACEUTICALS USA, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>*Defendant*. | Civil Action No.<br>1:18-cv-12029-ADB<br><br><br><br>**FILED UNDER SEAL**<br>**LEAVE TO FILE GRANTED**<br>**06/06/2022 (ECF NO. 385)** |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
<u>REGARDING INEQUITABLE CONDUCT AND UNCLEAN HANDS</u>**

██████████████████████████████████████

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1
II.  ARGUMENT ....................................................................................................................... 2
     A.   Lilly's opposition ignores the impact of *Therasense*. ............................................ 2
     B.   The record does not support a finding that ██████████ committed
          inequitable conduct. .................................................................................................. 4
          1.   Lilly's theory based on ██████████ fails as a matter of law. ............... 4
          2.   Lilly's theory based on Shaw fails as a matter of law. ............................... 7
          3.   Lilly's theory based on ██████████ fails as a matter of law. ................ 8
     C.   There is no evidence that Drs. Giering or Cole committed inequitable conduct. .... 9
III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*,
694 F.3d 1367 (Fed. Cir. 2012) ................................................................................... *passim*

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*,
2014 WL 7330777 (D. Mass. Dec. 19, 2014) ............................................................................ 5

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
2018 WL 4697255 (C.D. Cal. Aug. 3, 2018) ............................................................................. 3

*Baxter Int'l, Inc. v. CareFusion Corp.*,
2022 WL 981115 (N.D. Ill. Mar. 31, 2022) ........................................................................... 2, 3

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ..................................................................................................... 3

*Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*,
2022 WL 821441 (W.D. Va. Mar. 17, 2022) .............................................................................. 2

*Exergen Corp. v. Brooklands Inc.*,
290 F. Supp. 3d 113 (D. Mass. 2018) .......................................................................... *passim*

*Exergen Corp. v. Kaz USA, Inc.*,
120 F. Supp. 3d 1 (D. Mass. 2015) .................................................................................. 3, 8, 9

*Finjan, Inc. v. Juniper Network, Inc.*,
2018 WL 4181905 (N.D. Cal. Aug. 31, 2018) ......................................................................... 10

*Fiskars, Inc. v. Hunt Mfg. Co.*,
221 F.3d 1318 (Fed. Cir. 2000) .................................................................................................. 8

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) ............................................................................................. 6, 7

*Lear Corp. v. NHK Seating of Am. Inc.*,
2022 WL 876021 (E.D. Mich. Mar. 23, 2022) ........................................................................... 3

*Metris U.S.A., Inc. v. Faro Techs., Inc.*,
882 F. Supp. 2d 160 (D. Mass. 2011) ......................................................................................... 2

*Navico Inc. v. Garmin Int'l, Inc.*,
2017 WL 3701189 (E.D. Tex. Aug. 7, 2017) ............................................................................. 3

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) .................................................................................. 5

*Symbol Techs., Inc. v. Opticon, Inc.*,
  935 F.2d 1569 (Fed. Cir. 1991) .................................................................................. 5

*Terves, LLC v. Yueyang Aerospace New Materials Co.*,
  2022 WL 1092658 (N.D. Ohio Apr. 12, 2022) ...................................................... 2, 8

*Therasense, Inc. v. Benton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc) ......................................................... *passim*

*W. Plastics, Inc. v. DuBose Strapping, Inc.*,
  2022 WL 576218 (Fed. Cir. Feb. 25, 2022) ................................................................ 3

**Other Authorities**

37 C.F.R. § 1.78 ................................................................................................................ 10

Fed. R. Evid. 702 ................................................................................................................ 5

Fed. R. Evid. 704 ................................................................................................................ 5

I.     INTRODUCTION

Lilly's opposition largely ignores the Federal Circuit's decision in *Therasense, Inc. v. Benton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), which imposed heightened standards for both materiality and intent. No factfinder, on this record, could reasonably conclude that Lilly has satisfied *either* standard, let alone both.

Lilly's primary inequitable conduct claim rests on the lack of disclosure of ▮▮▮▮▮ and the Shaw prior art reference that *was disclosed* in prosecuting two of the three Patents-in-Suit. As to the materiality of ▮▮▮▮, the examiner already knew that not all antibodies that bind CGRP also antagonize it. Shaw, which the PTO *actually considered* before issuing two of the Patents-in-Suit, also did not disclose anything the examiner did not know. And ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even Lilly's experts were unable to opine that any of this was particularly important: The best they could muster was that ▮▮▮▮ "could have been relevant" and that ▮▮▮▮ would have been "germane." Neither this tepid expert testimony nor anything else in the record permits the but-for materiality finding that *Therasense* requires.

Lilly's case for specific intent to deceive is even weaker. Knowledge of a reference and its materiality—even if proven—is insufficient to show a specific intent to deceive. *E.g.*, *Therasense*, 649 F.3d at 1290; *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374–75 (Fed. Cir. 2012). Yet Lilly's entire intent case rests on the theory that ▮▮▮▮ knew of Shaw and ▮▮▮▮ and knew they were important. But Lilly offers *no* evidence that ▮ actually considered disclosing this information and chose not to do so. Moreover, an inequitable conduct claim fails if there are "reasonable inferences that may be drawn" *other than* the intent to deceive. *Therasense*, 649 F.3d at 1290–91. Lilly has not adduced evidence from which a factfinder could reject as "unreasonable" the "other inferences that can be drawn from the

1

evidence, such as a good faith belief that this information was not material." *Exergen Corp. v. Brooklands Inc.*, 290 F. Supp. 3d 113, 129 (D. Mass. 2018). Lilly claims that it can get to trial if the intent to deceive is *a* reasonable inference. That is simply not the law post-*Therasense*.

Lilly does not identify *any* evidence to support its claim that Drs. Cole and Giering sought to deceive the PTO by stating that Teva's delay in correcting a mistake in its priority chain was unintentional. No facts support this theory; Lilly invites rank speculation based on the delay itself. But the delay alone cannot support a finding that the delay was *intentional*, let alone that Dr. Giering or Cole *knew* it was intentional. Lilly also offers no reason *why* Teva would have intentionally delayed in fixing a problem that Teva had every reason to fix as soon as possible.[1]

## II.   ARGUMENT

### A.   Lilly's opposition ignores the impact of *Therasense*.

*Therasense* represented a "sea-change" in the law of inequitable conduct. *Metris U.S.A., Inc. v. Faro Techs., Inc.*, 882 F. Supp. 2d 160, 166 (D. Mass. 2011). Yet Lilly's opposition proceeds, in many respects, as if *Therasense* did not exist. For instance, Lilly cites (at 8) a pre-*Therasense* case for the proposition that summary judgment on inequitable conduct is "uncommon." But, while "it may have been true pre-*Therasense*" that "summary judgment motions for no inequitable conduct are rarely granted . . . , it is no longer the case." *Baxter Int'l, Inc. v. CareFusion Corp.*, 2022 WL 981115, at *8 (N.D. Ill. Mar. 31, 2022) (citing cases). Courts now grant summary judgment on this issue all the time: In the last few months alone, at least four district courts have granted such motions and the Federal Circuit has twice affirmed such rulings.[2]

---

[1] Contrary to Lilly's Opposition (at 2 n.1), holding that the record does not support Lilly's inequitable conduct counterclaims requires a grant of summary judgment on the related affirmative defenses, too. Lilly does not dispute that the counterclaims and affirmative defenses (including unclean hands) rest on precisely the same theory—one the factual record does not support.

[2] *E.g.*, *Baxter*, 2022 WL 981115, at *8; *Terves, LLC v. Yueyang Aerospace New Materials Co.*, 2022 WL 1092658, at *7–8 (N.D. Ohio Apr. 12, 2022); *Crown Packaging Tech., Inc. v. Belvac*

Lilly also ignores the Federal Circuit's instruction that, after *Therasense*, "[a]n applicant's knowledge of a reference's materiality . . . cannot by itself prove . . . that any subsequent non-disclosure was based on a deliberate decision." *1st Media*, 694 F.3d at 1375. Indeed, *Lilly itself* advocated for this holding in *Therasense*, writing: "No inference of intent from materiality should be permitted under any circumstances because materiality by itself is simply not probative of deceptive intent." Lilly Amicus Br., *Therasense*, *supra*, 2010 WL 3390224, at *5. An infringer asserting inequitable conduct must now show something akin to "selective disclosure," like "careful and selective manipulation of where, when, and how much of the most material information to disclose." *1st Media*, 694 F.3d at 1375. Lilly offers nothing of the sort: It offers precisely the knowledge-of-materiality theory of intent that the Federal Circuit "emphatically rejected," at Lilly's urging. *Exergen Corp. v. Kaz USA, Inc.*, 120 F. Supp. 3d 1, 7 (D. Mass. 2015).

Lilly also errs in asserting, in effect, that one of *Therasense*'s most important holdings—that "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found"—does not apply at summary judgment. *See* 649 F.3d at 1290–91. As Teva explained (at 14), courts in this district and elsewhere regularly grant summary judgment where the evidence permits inferences *other than* intent to deceive that a factfinder could consider reasonable. *E.g.*, *Exergen*, 120 F. Supp. 3d at 6–7; *Exergen*, 290 F. Supp. 3d at 129; *Lear*, 2022 WL 981115, at *8; *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, 2018 WL 4697255, at *11–12 (C.D. Cal. Aug. 3, 2018); *Navico Inc. v. Garmin Int'l, Inc.*, 2017 WL 3701189, at *2 (E.D. Tex. Aug. 7, 2017). The cases Lilly cites (at 11) are not to the contrary: They simply hold that a factfinder *could*, on the facts of

---

*Prod. Mach., Inc.*, 2022 WL 821441, at *4–7 (W.D. Va. Mar. 17, 2022); *Lear Corp. v. NHK Seating of Am. Inc.*, 2022 WL 876021, at *9–12 (E.D. Mich. Mar. 23, 2022); *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 992 (Fed. Cir. 2022); *W. Plastics, Inc. v. DuBose Strapping, Inc.*, 2022 WL 576218, at *1 (Fed. Cir. Feb. 25, 2022).

those cases, reject any other potential inference as unreasonable. This does *not* mean, as Lilly suggests, that Lilly must "prove now that deceit is the single most reasonable inference." Opp. at 10. What Lilly must do is adduce evidence that permits a finding that specific intent to deceive is a reasonable inference *and* a finding that *all other inferences are unreasonable*. In other words, there simply cannot be a finding of intent if there are multiple reasonable inferences. As discussed below, Lilly never explains what basis a factfinder would have for rejecting as unreasonable the non-deceptive explanations for the lack of disclosure at issue.[3]

    **B.**    **The record does not support a finding that ▓▓▓▓▓ committed inequitable conduct.**

        **1.**    **Lilly's theory based on ▓▓▓▓▓ fails as a matter of law.**

*Materiality.* Lilly asserts that ▓▓▓▓▓ should have disclosed ▓▓▓▓▓ ▓▓▓▓▓. But ▓▓▓▓▓ disclosed to the examiner that not all antibodies that bind to CGRP also antagonize it. ECF No. 349 ("RSUMF") ¶ 10. There was indisputably no outright deception—the examiner never asked the applicants to identify a non-C-terminal antibody that antagonized CGRP, and ▓▓▓▓▓ never asserted that they *had* identified such an antibody. *See* ECF No. 368 Ex. BU. The data on which Lilly relies was preliminary and addressed polyclonal, not monoclonal, antibodies. RSUMF ¶ 41. Thus, as Dr. Hale explained, the disclosure of ▓▓▓▓▓ could not have been *dispositive*: The examiner knew that not all binding antibodies antagonize, so the fact that, in ▓▓▓▓▓ *some* non-C-terminal antibodies bound but did not antagonize is cumulative and does not mean that *other* non-C-terminal antibodies would not be antagonists.

---

[3] Lilly is wrong that the preponderance standard applies to materiality. Opp. at 12–13. The case Lilly cites notes that the examiner, in the but-for world, would apply the preponderance standard. But Lilly "must prove both elements—intent and materiality—by clear and convincing evidence." *Therasense*, 649 F.3d at 1287; *Exergen*, 575 F.3d at 1329 n.5 (same).

████████████████████████████████████

Trying to gin up a factual dispute, Lilly casts the issue as a battle of the experts. But there is no battle, because Lilly's expert offered no relevant opinion. ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████. That is *not* the *Therasense* materiality standard. And, contrary to Lilly's Opposition (at 14), ███████████████████████████████ is not close to sufficient to "guide" a factfinder to a conclusion that the data would have been *dispositive*. ████

████████████████████████████████████████████████████████████████

██████████████████████████████████ *see PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)—███████████████████████████

Lilly suggests (at 14) that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ But "an [expert] opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Across patent law, experts skilled in the relevant art routinely opine on "ultimate issue[s]" where, as here, that testimony "will help the trier of fact to understand the evidence" (Fed. R. Evid. 702), by applying complex, technical facts to a governing legal framework. *Cf., e.g.*, *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575 (Fed. Cir. 1991) ("testimony on the ultimate issue of infringement is permissible"). *Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, 2014 WL 7330777 (D. Mass. Dec. 19, 2014), is not to the contrary. That case—which did *not* involve but-for materiality—held that a *patent attorney* could not "speculate[]" as to what a *specific examiner* was thinking in reviewing a specific application. *Id.* at *8. It does not suggest that a skilled artisan could not opine as to how one skilled in the art—

5

which, again, an examiner is presumed to be—would have understood the marginal relevance of the data. Dr. Hale properly provided such an opinion; Dr. McDonnell could have, but did not.

Nor is Dr. McDonnell's brief discussion of ▇▇▇▇ sufficient, absent a materiality opinion, to support a finding of but-for materiality. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ But it is *undisputed* that the examiner knew that not all antibodies that bind CGRP also antagonize it. RSUMF ¶ 22. Thus, the fact that *some* non-C-terminal antibodies bind but do not antagonize CGRP does not meaningfully confirm a lack of possession or contradict the snippet of prosecution history any more than what was already before the examiner. Unsurprisingly, then, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Seeking to backfill, Lilly argues (at 14) that there was no other evidence before the examiner "as to how non-C-terminal binding antibodies affect CGRP biological activity." But all ▇▇▇▇ shows is that *some* such antibodies do not antagonize, which is consistent with the other disclosures to the examiner.

**Intent.** Lilly's primary intent argument stems from purported evidence that ▇▇▇▇ was "acutely aware" that the data was important and did not disclose it. Opp. at 9–10. That, of course, is not enough: "Knowledge of the reference and knowledge of materiality alone are insufficient after *Therasense* to show an intent to deceive." *1st Media*, 694 F.3d at 1374.

So Lilly concocts a story (at 10), based on speculation as to the content of ▇▇▇▇ ▇▇▇▇, that ▇▇▇▇ were generated as part of an ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇. That argument flies in the face of Federal Circuit precedent *prohibiting* precisely the type of "adverse inference" from privileged communication Lilly asks this Court to draw. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d

6

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

1337, 1344 (Fed. Cir. 2004). Lilly's only response (at 12) is that *Knorr-Bremse* was a willfulness case. But the court's reasoning had nothing to do with willfulness; it held that allowing adverse inferences from the assertion of privilege would "distort the attorney-client relationship," undermining the need for "full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney." *Id.* at 1344. That reasoning applies fully here. Without the adverse inference it seeks, Lilly's argument evaporates. Lilly emphasizes Teva's "lucre motive" in obtaining broader claims, but *every* patent applicant wants the broadest coverage to which it is entitled. If a "lucre motive" were enough to support a finding of specific intent, then *every* withheld material reference would be the basis for inequitable conduct.

Finally, even if a factfinder could infer intent to deceive as an explanation, Lilly's claim fails because "there are other inferences that can be drawn from the evidence," which no factfinder could reject as unreasonable. *Exergen*, 290 F. Supp. 3d at 129; *see* Mot. at 17–18. For instance, no factfinder could reject as *unreasonable* the inference that ▆▆▆▆▆▆▆▆▆▆ viewed the data as cumulative or otherwise not dispositive of the patentability of these specific claims.

### 2. Lilly's theory based on Shaw fails as a matter of law.

*Materiality*. Lilly asserts that Shaw, like ▆▆▆▆▆▆▆▆, would have been material because it shows that some non-C-terminal antibodies bind to, but do not antagonize, CGRP. But Shaw shows that some non-C-terminal binding antibodies *do* antagonize CGRP, hence *supporting* patentability. RSUMF ¶ 33. Also, Shaw *was disclosed to the PTO* in the prosecution of *both* the '907 and '908 patents. The examiner indicated that he considered Shaw, and yet those patents issued anyway. RSUMF ¶¶ 29–31. Lilly does not argue that Shaw would have had any more relevance in the '045 prosecution than in the '907 and '908 prosecutions. We therefore *know* that the examiner would have issued the patents-in-suit over Shaw, because *he did just that*. Just last month, a district court held that the fact that a patent was confirmed in reexamination over a

reference that was excluded during prosecution precluded a finding of but-for materiality of the excluded reference.  *Terves*, 2022 WL 1092658, at *7.  So too, here.

Lilly's only response (at 15) is that Shaw was "buried" in the '907 and '908 prosecutions.  But the Federal Circuit has held that "[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner"—precluding a "burying" theory.  *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000).  Lilly seeks an exception to that rule that appears nowhere in *Fiskars*.  Moreover, Lilly does not dispute that, by not striking out Shaw, the examiner indicated that he *actually considered Shaw* before issuing the patents.  RSUMF ¶¶ 30–31  The parties' dispute about the validity of a "burying" theory is thus largely irrelevant for purposes of materiality:  Because the examiner issued the '907 and '908 patents after *actually considering Shaw*, prior lack of disclosure of Shaw cannot be but-for material, as the *Terves* court recognized.

***Intent.***  Lilly's intent theory as to Shaw is one paragraph long.  Lilly asserts (at 14–15) that ▮▮▮ "clearly knew of Shaw"; that ▮▮▮ made a chart "indicating ▮ understanding of the importance of [its] results"; and that this "permits a finding" that the failure to "disclose Shaw" was made with "intent to deceive the PTO."  This is precisely the type of theory that the Federal Circuit has "emphatically rejected."  *Exergen*, 120 F. Supp. 3d at 7.  "An applicant's knowledge of a reference's materiality … cannot by itself prove, let alone clearly and convincingly prove, that any subsequent non-disclosure was based on a deliberate decision."  *1st Media*, 694 F.3d at 1375.  Yet ▮▮▮ purported "knowledge of [Shaw's] materiality" is literally all that Lilly invokes.

3. **Lilly's theory based on ▮▮▮ fails as a matter of law.**

***Materiality.***  There is no dispute that ▮▮▮ results lacked a control group.  RSUMF ¶ 55.  Nor is there any dispute that ▮▮▮ responses to ▮▮▮ were to suggest *further experiments with a control*.  See RSUMF ¶¶ 56, 57.  That should be the end of the matter for purposes of materiality:  The idea that an experiment that lacked a control group would

8

have been *dispositive* as to patentability is nonsensical.  Unsurprisingly, Lilly's expert, ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Lilly's only response is to quote a handful of out-of-context, contemporary statements that ▇▇▇▇▇▇ had "fail[ed]" or showed "negative" results.  That misses the point.  There is no dispute that ▇▇▇▇▇▇▇▇▇▇ showed negative results, but it did so without a control to show whether the problem was with the treatment *or with the experiment itself*.  Without answering that question, the results could not have transformed a patentable claim to an unpatentable one.

***Intent.***  Lilly's two-paragraph discussion of intent with regard to ▇▇▇▇▇▇ rests *entirely* on the theory that ▇▇▇▇▇▇▇▇ knew ▇▇▇▇▇▇ was important and yet did not disclose it.  As discussed, the Federal Circuit has made it "emphatically" clear that this is not enough.  *Exergen*, 120 F. Supp. 3d at 7; *1st Media*, 694 F.3d at 1375.  Lilly's claim also fails because "there are other inferences that can be drawn from the evidence, such as a good faith belief that this information was not material."  *Exergen*, 290 F. Supp. 3d at 129.  Indeed, ▇▇▇▇▇▇ testimony and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ suggest that they did *not* view ▇▇▇▇▇▇ as particularly probative because it lacked a control group.  Even Lilly concedes that ▇▇▇▇▇▇ response was not to give up, but to propose *more experiments*.  RSUMF ¶ 57.  Nothing in the record would permit a factfinder to reject a "good faith belief that ▇▇▇▇▇▇ was not material" as a *reasonable* inference, and so Lilly's claim fails as a matter of law.

**C.     There is no evidence that Drs. Giering or Cole committed inequitable conduct.**

Lilly did not even try to develop its claim based on Dr. Cole's statements—in three filings containing Dr. Giering's name—that a delay in correcting a priority chain was "unintentional."  Lilly's documentary evidence consists *entirely* of the filings.  Lilly did not depose Dr. Cole.  Lilly asked Dr. Giering about only one statement, to which Dr. Giering responded: "I have no reason to

9

believe it's not a true statement." RSUMF ¶ 20  And Lilly seeks an adverse inference from an assertion of privilege, which is improper, as discussed above. That is all there is.

Having failed to develop its claim through discovery, Lilly asks the Court to save it through speculation. Lilly asks the Court to infer deceptive intent from the delay itself, citing *Finjan, Inc. v. Juniper Network, Inc.*, 2018 WL 4181905 (N.D. Cal. Aug. 31, 2018). But in *Finjan* there was a reason to suspect intentional delay: The patentee sought to improperly extend the patent term by waiting to assert an earlier priority date until necessary to avoid an invalidity challenge. *Id.* at *7. Lilly, by contrast, identifies no reason Teva would have intentionally delayed in correcting the priority chain. To the contrary, Lilly emphasizes Teva's motivation to *fix* that unintentional break. Absent some indication that Teva would benefit *from the delay itself*—like the patent owner in *Finjan*—the delay itself cannot be evidence that the delay was intentional. And it certainly cannot support a finding that Drs. Giering and Cole *knew* that the delay was intentional.

Lilly also asserts that Drs. Giering and Cole's strategy for fixing the priority-date issue—first correcting the priority chain for the earliest application, then filing petitions to correct the chain for the subsequent applications after the PTO accepted the petition for the prior application—inherently created intentional delay. But this practice does not involve "delay" at all: a subsequent application could not claim priority to an earlier application that had not yet been corrected. Lilly cites no legal support for its interpretation of 37 C.F.R. § 1.78. Even if this were intentional delay under the regulation, there is no evidence that Dr. Giering or Cole *believed* that this practice constituted "intentional" delay. Thus, there can be no intent to deceive. Finally, there can be no intent to deceive given that the PTO *knew* Drs. Giering and Cole submitted these petitions seriatim and did not object. *E.g.*, ECF No. 368 Exs. AN, AO (same examiner granting petitions).

### III.   CONCLUSION

The Court should grant Teva's Motion for summary judgment.

10

Dated:  June 7, 2022

I. Neel Chatterjee (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, CA 94063
Tel.: (650) 752-3100
Fax: (650) 853-1038
nchatterjee@goodwinlaw.com

Natasha E. Daughtrey (*pro hac vice*)
Sean M. Anderson (*pro hac vice*)
GOODWIN PROCTER LLP
601 S. Figueroa St.
Los Angeles, CA 90017
Tel.: (213) 426-2500
Fax: (213) 623-1673
ndaughtrey@goodwinlaw.com
sanderson@goodwinlaw.com

Madeline R. DiLascia (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street N.W.
Washington, D.C. 20036
Tel.:  (202) 346-4000
Fax.:  (202) 204-7250
mdilascia@goodwinlaw.com

Respectfully Submitted,

*/s/ Elaine Herrmann Blais*
Douglas J. Kline (BBO# 556680)
Elaine Herrmann Blais (BBO# 656142)
Robert Frederickson III (BBO# 670111)
Joshua S. Weinger (BBO# 690814)
Alexandra Lu (BBO# 691114)
Eric T. Romeo (BBO# 691591)
Kathleen A. McGuinness (BBO# 693760)
Tara R. Thigpen (BBO 707508)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
dkline@goodwinlaw.com
eblais@goodwinlaw.com
rfrederickson@goodwinlaw.com
jweinger@goodwinlaw.com
alu@goodwinlaw.com
eromeo@goodwinlaw.com
kmcguinness@goodwinlaw.com
tthigpen@goodwinlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Elaine Hermann Blais, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on July 28, 2022.

/s/ *Elaine Herrmann Blais*
Elaine Herrmann Blais (BBO# 656142)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
eblais@goodwinlaw.com