UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TEVA PHARMACEUTICALS INTERNATIONAL GMBH and TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 18-cv-12029-ADB <br> * <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER ON MOTIONS IN LIMINE**

BURROUGHS, D.J.

Currently before the Court are several motions *in limine* ("MIL") filed by Plaintiffs Teva Pharmaceuticals International GmbH and Teva Pharmaceuticals USA, Inc. (collectively, "Teva"), [ECF No. 481 (omnibus motion)], and Defendant Eli Lilly and Company ("Lilly"), [ECF Nos. 472, 474, 476, 477, 478, 479, and 480]. Having considered all of the submissions filed in connection with these motions, and having heard oral argument regarding Lilly's MIL No. 2 regarding Bergerot, the Court makes the following determinations with respect to the motions.

**I.  DISCUSSION**

The Court assumes the parties' familiarity with the underlying facts and allegations in this case. In sum, Teva brings this case alleging that Lilly has infringed three patents[1] (the "Patents-in-Suit") that relate to the treatment of headaches. Lilly disputes this and contends that

---

[1] U.S. Patent Nos. 8,586,045 (the "'045 patent"); 9,884,907 (the "'907 patent"); and 9,884,908 (the "'908 patent").

the Patents-in-Suit are unenforceable because they are invalid and because Teva engaged in inequitable conduct or has unclean hands. The Court ruled on the parties' cross-motions for summary judgment, [ECF No. 513], and the case is now ready for trial.

### A. Teva's MIL No. 1: Motion to Preclude Lilly From Arguing and Introducing Post-Filing Date Evidence to Support Its Enablement and Written Description Defenses

Teva moves to preclude Lilly from offering opinions or arguments in support of its invalidity defenses that rely on evidence that post-dates the filing date of the Patents-in-Suit, arguing that such evidence is irrelevant and unfairly prejudicial. [ECF No. 483 at 10]. Teva argues that the evidence is irrelevant because compliance with the written description and enablement requirements is judged based on the state of the art as of the filing date of the patents. [Id. at 11 (citations omitted)].

Although Teva is correct that written description and enablement are judged based on the state of the art as of the filing date, see Ariad Pharms., Inc. v. Eli Lilly and Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) ("[T]he description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.' In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.") (second alteration in original) (internal citations omitted); Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1345 (Fed. Cir. 2000) ("Enablement is determined from the viewpoint of persons of skill in the field of the invention at the time the patent application was filed."), this does not mean that all evidence that post-dates the filing date is irrelevant. With respect to the written description inquiry, the Federal Circuit has held that in the context of functionally defined genus claims, such as those at issue here, "post-priority-date evidence of a particular species can reasonably bear on whether a patent fails to disclose a representative number of species falling

2

within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can visualize or recognize the members of the genus." Amgen Inc. v. Sanofi, 872 F.3d 1367, 1374 (Fed. Cir. 2017) (internal quotation marks and citation omitted). As for enablement, the Federal Circuit has held that "post-priority-date evidence showing that [the patent owner] engaged in lengthy and potentially undue experimentation to enable the full scope of the claims" "could have been relevant to determining if the claims were enabled as of the priority date and should not [be] excluded simply because [the evidence] post-date[s] the claims' priority date." Id. at 1375.

Therefore, because evidence that post-dates the filing date is not categorically irrelevant to the issues of written description and enablement, Teva's motion is DENIED.

> **B.     Teva's MIL No. 2:  Motion to Preclude Lilly From Arguing and Introducing Evidence That FDA-Required Studies Are Relevant to Lilly's Written Description and Enablement Arguments**

Teva next moves to prevent Lilly from introducing, with respect to the written description and enablement inquiries, three categories of evidence related to testing performed for regulatory purposes in connection with FDA approval. [ECF No. 483 at 16]. The evidence pertains to (1) the timeline relating to Lilly's Phase II and Phase III clinical trials and the amount of effort involved in conducting those trials, (2) the Phase III results for Emgality (Lilly's galcanezumab) and Ajovy (Teva's fremanezumab) for the treatment of episodic cluster headaches, and (3) the assertion by Lilly's experts that testing in "non-human primates" was "required" to comply with the written description and enablement inquiries. [Id.].

35 U.S.C. § 112 states that a patent specification "shall contain a written description of the invention[,]" the test for which is "an objective inquiry into the four corners of the specification from the perspective of a [POSA]." Ariad, 598 F.3d at 1351. "A specification adequately describes an invention when it 'reasonably conveys to those skilled in the art that the

inventor had possession of the claimed subject matter as of the filing date.'" Juno Therapeutics, Inc. v. Kite Pharma, Inc., 10 F.4th 1330, 1335 (Fed. Cir. 2021) (quoting Ariad, 598 F.3d at 1351). The enablement requirement, for its part, demands that the specification "teach the public how to practice the full scope of the claimed invention." McRO, Inc. v. Bandai Namco Games Am., Inc., 959 F.3d 1091, 1099–100 (Fed. Cir. 2020) (internal quotation marks omitted) (quoting AK Steel Corp. v. Sollac, 344 F.3d 1234, 1244 (Fed. Cir. 2003)). Further, "[t]o prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'" Amgen Inc. v. Sanofi, Aventisub LLC, 987 F.3d 1080, 1084 (Fed. Cir. 2021) (quoting Alcon Rsch. Ltd. v. Barr Lab'ys, Inc., 745 F.3d 1180, 1188 (Fed. Cir. 2014)). "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988).

    1.    The timeline related to Lilly's Phase II and Phase III clinical trials and the effort involved in conducting such trials.

Teva argues that Lilly should not be permitted to introduce evidence related to its Phase II or Phase III clinical trials to support its invalidity defenses because those trials are part of the FDA's process for evaluating the safety and efficacy of new drugs, which, according to Teva, is irrelevant to these defenses. [ECF No. 483 at 17]. Lilly argues in response that Teva has confused what is required for patentability with relevance. [ECF No. 501 at 19]. In Lilly's view, the clinical trials are relevant to both invalidity defenses because they bear on when persons skilled in the art would have believed it was possible to treat headache using an anti-CGRP antagonist antibody. [Id.].

Following the same line of reasoning discussed in the Court's order on Teva's MIL No. 1, the Court finds that evidence of Lilly's clinical trials is relevant to the enablement inquiry because it may offer insight into the extent of experimentation necessary to practice the claimed methods. In contrast, the Court does not see how Lilly's later clinical trials are relevant to the issue of written description. As an en banc panel of the Federal Circuit has held, the test to determine if the written description requirement is met involves "an objective inquiry into the four corners of the specification from the perspective of a [POSA]." Ariad, 598 F.3d at 1351. Evidence of later clinical trials are thus outside of the proper scope of the written description inquiry. Therefore, Lilly may introduce evidence of its Phase II and Phase III clinical trials in the context of enablement but may not use the same evidence with respect to written description unless it can show relevance beyond what is currently before the Court. The Court will give limiting instructions as warranted.

      2.    <u>Phase III results for Emgality and Ajovy for treating episodic cluster headache.</u>

For the same reasons discussed above, evidence regarding Phase III results for Emgality and Ajovy may be referenced in the context of enablement but not with regard to written description unless there is a showing of relevance at trial.

      3.    <u>Assertion by Lilly's experts that testing in "non-human primates" is "required" to comply with the written description and enablement inquiries.</u>

The parties appear to agree that Lilly may not suggest to the jury that testing on non-human primates is required to meet Section 112's written description and enablement requirements. The Court concurs. Nevertheless, Lilly may, subject to proper objections, argue that the absence of such data supports its invalidity arguments.

Accordingly, Teva's MIL No. 2 is <u>GRANTED</u> in part and <u>DENIED</u> in part with leave to renew at trial if warranted.

  **C. Teva's MIL No. 3: Motion to Preclude Lilly From Using and Introducing As Evidence Expert Depositions and Declarations From Witnesses That Are Not Testifying In This Case**

In this motion, Teva seeks to prohibit Lilly from introducing deposition testimony and declarations by experts that Teva relied upon in the *inter partes* review ("IPR") proceedings regarding the Patents-in-Suit. Granting Teva's request would be improper. To begin, statements by Teva's experts in the IPR proceedings—whether in the form of deposition testimony or declarations—are admissible if Lilly's experts relied on those statements in forming their opinions. Fed. R. Evid. 703. The Court also agrees with Lilly that statements by these experts fall under Fed. R. Evid. 801(d)(2)(C)'s exception to hearsay because they were made by people whom Teva "authorized to make a statement on the subject[.]" Accordingly, Teva's MIL No. 3 is <u>DENIED</u> with leave to renew at trial if warranted.

  **D. Teva's MIL No. 4: Motion to Preclude Lilly From Arguing and Introducing Evidence Regarding Statements Concerning Unrelated Patents**

Teva seeks to stop Lilly from introducing (1) a statement by Teva's counsel that described the specification in the Patents-in-Suit as "scant and mostly irrelevant" when talking about dosing fremanezumab in connection with a different invention and (2) prior statements by one of Teva's experts, Dr. Ravetch. The statement by Teva's counsel was made during the prosecution of a different patent, the '705 Application, that related to the "recommended dose" of fremanezumab. In contrast, the Patents-in-Suit claim only the treatment of headache with an "effective amount" of an anti-CGRP antibody. And, as Teva correctly notes, later inventive work, such as the identification of a recommended dose, "does not alone show nonenablement." <u>CFMT, Inc. v. Yieldup Int'l Corp.</u>, 349 F.3d 1333, 1340 (Fed. Cir. 2003). While the statement

6

by Teva's counsel may have a modicum of relevance to the invalidity inquiries, the Court finds that the relevance of this statement—made in the context of a separate invention that claimed something above and beyond what was claimed in the Patents-in-Suit—is far outweighed by the risk it will confuse and prejudice the jury.  The Court thus GRANTS to the motion to the extent it seeks to include the statement by Teva's counsel.

Lilly, however, is free to use Dr. Ravetch's prior sworn testimony during cross-examination to impeach his credibility, and accordingly the motion is DENIED to the extent it sought to exclude said testimony.  If Teva believes the line of questioning lacks relevance or is otherwise objectionable, it may raise those issues at trial.

### E. Teva's MIL No. 5:  Motion to Preclude Lilly from Introducing As Evidence Lilly's Patent Covering the Use of Emgality

Teva also moves to bar the introduction of Lilly's patents related to Emgality (galcanezumab).  [ECF No. 483 at 23].  The motion is DENIED with leave to renew at trial.  Beyond the doctrine of equivalents, the patents, at a minimum, are relevant to Lilly's written description defense and whether there was willful infringement.  Any potential confusion—the risk of which the Court views as minimal—can be appropriately addressed by a limiting instruction to the jury.

### F. Teva's MIL No. 6:  Motion to Preclude Lilly from Arguing Or Suggesting That Teva Is Asserting DOE In This Case Because Of Concerns Of Validity

Teva contends that Lilly should be precluded from arguing that Teva is asserting infringement under the doctrine of equivalents because Teva doubts the validity of its asserted claims.  [ECF No. 483 at 27].  Lilly responds that it "should be permitted to present this [argument] to the jury if Teva opens the door by telling the jury that the patents-in-suit are presumed valid."  [ECF No. 501-1 at 29].  Because Lilly's motion to preclude Teva from

referring to the "presumption of validity," [ECF No. 476], is GRANTED, this motion is DENIED as moot with leave to renew if warranted.

### G. Teva's MIL No. 7: Motion to Preclude Lilly From Referencing Inequitable Conduct Allegations, Including Any Facts Solely Related To Equitable Defenses

Teva moves to bar Lilly from introducing any evidence or making any arguments regarding Lilly's inequitable conduct and unclean hands defenses, and specifically requests that Lilly be precluded from referring to alleged decisions by the named inventors of the Patents-in-Suit to withhold any scientific references from the United States Patent & Trademark Office ("PTO"), the process by which these references would have been disclosed to the PTO, or disparaging the named inventors of the Patents-in-Suit. Teva further asks that Lilly be prevented from offering any opinions regarding the materiality of the allegedly withheld scientific references or the intent of the named inventors. [ECF No. 483 at 28]. This motion is DENIED with leave to renew at trial. To begin, Lilly states that it "does not plan to present evidence to the jury relating to the intent of Drs. Zeller and Pons or the 'materiality' of the references per se." [ECF No. 501-1 at 30]. Lilly further "agrees that no evidence related to its inequitable conduct Counterclaims XIX-XX on correction of priority of the patents-in-suit will be shown to the jury." [Id. n.13]. Thus, it appears that the parties understand that there are proper and improper uses for evidence that is related to Lilly's inequitable conduct defenses, and because such evidence may be relevant to other issues to be decided by the jury, it would be improper for the Court to preemptively bar the introduction of any evidence that pertains to alleged inequitable conduct.

### H. Teva's MIL No. 8: Motion to Preclude Lilly From Arguing Or Introducing Evidence That It Had A Subjective Good Faith Belief That Teva's Patents Were Invalid or Not Infringed

Teva contends that Lilly should be prevented from introducing argument or evidence that Lilly and its principals had a subjective good faith belief in the company's defenses, namely

8

invalidity and non infringement. [ECF No. 483 at 29]. Teva's view is that any subjective belief that Lilly, or its principals, had regarding its defenses was the product of receiving advice from counsel and, therefore, Lilly was required to disclose summaries of the legal advice within 28 day of the Court's claim construction ruling pursuant to Local Rule 16.6(f). [Id. at 30]. Lilly counters that it "has never stated that its subjective, good faith belief was based on [advice of counsel]" and points to other evidence, including its IPR petitions and the alleged structural and functional differences between galcanezumab and fremanezumab, as the basis for its good faith subjective belief. [ECF No. 501-1 at 32]. Based on the briefing on this motion, it appears there may be evidence apart from advice received from counsel that supports Lilly's belief in its defenses, and thus the Court will not categorically preclude Lilly from introducing evidence supporting its beliefs absent an inquiry into whether that particular piece of evidence was related to advice of counsel. The Court, however, warns Lilly that use of its IPR petitions or other IPR materials may open the door to inquiries by Teva concerning the advice of counsel with this determination to be made at trial with a more complete record and some context. Teva's motion is therefore <u>DENIED</u> with leave to renew at trial as warranted.

I.  **Teva's MIL No. 9: Motion to Preclude Lilly From Relying On Testimony From Witnesses Not Disclosed On Initial Disclosures**

Teva asks the Court to stop five of Lilly's fact witnesses (Ryan Darling, Ryan Pettibone, Kathryn Ramseyer, Cory Rotterman, and Laura Steele) from testifying at trial primarily because Lilly did not identify any of the witnesses in its Fed. R. Civ. P. 26(a)(1)(A) disclosures. Teva claims that Lilly's failure to properly disclose these individuals reflects its "complete disregard" for its disclosure obligations. This contention, however, ignores the express language of Rule 26(e), which states that a party must supplement its Rule 26(a) disclosures only "if the additional or corrective information has not otherwise been made known to the other parties during the

9

discovery process . . . ." Fed. R. Civ. P. 26(e)(1)(A). Each of the five witnesses that Teva asks be barred from testifying were deposed by Teva during the course of discovery. See [ECF No. 483 at 34]. Given that Lilly designated four of the five witnesses as Fed. R. Civ. P. 30(b)(6) corporate designees and that Teva deposed each of them, its nondisclosure argument fails. Accordingly, the motion is DENIED.

### J.      Teva's MIL No. 10:  Motion to Preclude Lilly From Disparaging Generic Drugs, Generic Drug Manufacturers, or Teva

In this multi-part motion, Plaintiff asks the Court to preclude Lilly from advancing a wide variety of arguments, statements, and evidence, including: (1) Teva's involvement in a Department of Justice ("DOJ") antitrust investigation and opioid litigation; (2) Teva's respect, or lack thereof, for patent rights; (3) references to Teva as an Israeli business or derogatory statements regarding Israel or Israeli businesses; (4) Teva's alleged lack of experience working with pharmacy benefit managers ("PBMs"); (5) Teva's sale of opioids; and (6) Teva's discontinuation of Zecuity. [ECF No. 483 at 35–39].

Teva asks the Court to stop Lilly from introducing any evidence or referring to other proceedings involving Teva that are unrelated to the Patents-in-Suit, including but not limited to a Department of Justice antitrust investigation and opioid litigation. [ECF No. 483 at 35]. Teva argues that these other matters are irrelevant to the substantive issues in this case and that such evidence is likely to confuse and mislead the jury. [Id. at 35–36]. Lilly responds that the opioid litigations and DOJ antitrust investigations are "relevant to the damage calculations [in this case] and Teva's pursuit of damages from Lilly[,]" because they bear on "Teva's negotiating power during the hypothetical negotiation for the reasonable royalty analysis . . . ." [ECF No. 501-1 at 39]. While the DOJ investigation and the opioid litigation may have some minimal relevance to the hypothetical negotiation, that limited relevance is substantially outweighed by the risk of

confusion and prejudice, especially in light of media coverage of the ongoing opioid epidemic. Therefore, Teva's motion is GRANTED to the extent it seeks to preclude evidence related to the DOJ antitrust investigation or Teva's involvement in opioid litigation.

Teva's motion is further GRANTED to the extent it seeks to preclude (1) Lilly from introducing evidence or argument related to Teva's sales of opioids and/or opioid abuse and (2) evidence related to removal of Zecuity from the market because any relevance of either category of evidence is similarly substantially outweighed by its danger to confuse and prejudice the jury.

To the extent Teva's motion seeks to preclude Lilly from arguing that Teva does not respect patent rights, it is DENIED as moot because Lilly does not intend to advance such arguments at trial.

Teva also seeks to bar Lilly from "referring to Teva as an Israeli business and [] making derogatory statements regarding Israel or Israeli businesses." [ECF No. 483 at 37]. This aspect of the motion is DENIED as moot based on Lilly's statement that it does not intend to make such statements. The Court will allow incidental references to the fact that Teva, or its witness, is based in Israel but cautions against any suggestion that this is relevant to the merits of this dispute.

Finally, Lilly may introduce evidence regarding the extent of Teva's experience working with pharmacy benefit managers to the extent relevant to a hypothetical negotiation but is cautioned to limit its reliance on the fact that Teva's business involves generics.

Accordingly, Teva's MIL No. 10 is GRANTED in part and DENIED in part.

### K. Teva's MIL No. 11: Motion to Preclude Lilly From Relying On Non-Comparable Licenses

Teva asks that the Court preclude Lilly from introducing any evidence regarding patent licensing agreements that it contends "are not comparable or relevant to the hypothetical

negotiation in this case. [ECF No. 483 at 40]. Because Lilly has agreed not to use certain of the licenses referenced in Teva's motion, this motion now concerns only licenses produced at DTX_0314, DTX_0315, and DTX_0316. [ECF No. 501-1 at 43]. Lilly argues that these remaining licenses are relevant to the royalty analysis and thus damages, and points to its expert's reliance on the documents in preparing his expert report. [Id.]. The Court cannot determine, based on the very limited briefing, whether the licenses, which purportedly "transferred patent rights and other intellectual property rights related to the active ingredient in Ajovy," [id.], should be excluded. The Court thus DENIES the motion with leave to renew at trial.

   L.  **Teva's MIL No. 12: Motion to Preclude Lilly From Arguing Any Potential Impact Of A Jury Verdict In Teva's Favor On Patients Or Consumers**

Teva submits that the Court should preclude Lilly from arguing or otherwise suggesting that a jury verdict in Teva's favor would impact patients or consumers by, among other things, increasing costs or removing a product option from the market. [ECF No. 483 at 41]. In support, Teva argues that such evidence is irrelevant and unfairly prejudicial. Under Federal Rule of Evidence 401 "[e]vidence is relevant if it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Although relevant evidence is admissible, the Court may still exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 402, 403. The Court agrees that this sort of market evidence has minimal, if any, relevance to the issues to be decided by the jury and that whatever relevance it has is substantially outweighed by the danger of unfair prejudice. Accordingly, the motion is GRANTED.

**M.    Teva's MIL No. 13:  Motion to Preclude Lilly from Taking Positions Contrary to Ones taken by Lilly During *Inter Partes* Review Proceedings**

Teva appears to raise in this motion the same arguments set forth in its motion for partial summary judgment regarding judicial estoppel, see [ECF No. 314], and Lilly in its opposition incorporates by reference its position on that motion, see [ECF No. 501-1 at 45–46, 46 n.26]. For the reasons set forth in the Court's order denying Teva's motion for partial summary judgment, see [ECF No. 513 at 16–23], this motion is similarly DENIED with leave to renew at trial if warranted.

**N.    Teva's MIL No. 14:  Motion to Preclude Lilly From Showing Witnesses Documents that They are Not Authorized to Access Under the Protective Order**

Teva asks the Court to categorically preclude Lilly from showing witnesses documents during direct or cross examination that the witnesses are not authorized to access or review under the applicable protective order.  [ECF No. 483 at 43 (citing ECF No. 381 (protective order))]. The Court agrees with Lilly that any general order prohibiting witnesses from reviewing entire documents would be premature and inappropriate as there will be, for example, portions of documents that are subject to the protective order and other portions that are not.  The Court will address such issues as they arise at trial.  The motion is DENIED.

**O.    ECF No. 472: Lilly's MIL No. 1 Regarding Judicial Estoppel**

Lilly's first motion *in limine* asks the Court to find that Teva is judicially estopped from advancing arguments at trial related to the state of the art with respect to the blood-brain barrier ("BBB") and associated skepticism about the ability of antibody drugs to treat migraines, which Lilly contends directly contradict positions Teva advanced in the IPRs.  Having closely considered the allegedly contradictory statements, Lilly's motion is DENIED.  Lilly's arguments fail to take into account key differences between this case and the IPR proceedings, including the

13

different legal issues at play, and also misconstrue the record. For example, in the IPR proceedings one of the questions presented to the Patent Trial and Appeals Board ("PTAB") was the obviousness of the patents, which involved examining the prior art absent and apart from any new information contained in the claimed invention's specification. In that context, Teva's experts opined that a POSA, without the benefit of the specification of the Patents-in-Suit, would be skeptical of an anti-CGRP antibody being able to treat migraine. It is not contradictory, however, for Teva's experts to opine, in the instant proceeding, that a POSA's skepticism would have been addressed based on the additional information contained in the specification. Lilly's additional arguments regarding Teva's allegedly contradictory statements regarding (1) the action site of small-molecule drugs, (2) the closed cranial window assay, and (3) skepticism that remained after the filing of the Patents-in-Suit, fail because they are each premised on misconstructions or mischaracterizations of the record.

   P.   **ECF No. 474: Lilly's MIL No. 2 Regarding <u>Bergerot</u>**

Lilly moves to preclude Teva from introducing testimony or argument regarding a scientific article referred to as <u>Bergerot</u>, which was published in September 2006 because it was produced late and because Teva did not supplement its interrogatory responses to identify the article as support for the validity of the asserted claims. [ECF No. 475 at 5]. Lilly also argues that <u>Bergerot</u> is not prior art and therefore irrelevant.

Whether to admit <u>Bergerot</u>, a scientific journal article that was produced in discovery and relied on during expert depositions, turns largely on whether it qualifies as prior art. In Lilly's view, it is not because Teva has stated previously that the asserted claims were reduced to practice as of November 14, 2005. [ECF No. 475 at 10 n.3]. Teva, on the other hand, claims

that it is prior art because the "effective filing date" for the Patents-in-Suit is November 2, 2006. [ECF No. 504-1 at 7].

35 U.S.C. § 102(a)(1) defines prior art as information that was "available to the public before the effective filing date of the claimed invention." Relevant here, the Patents-in-Suit "descend from, and claim priority to, two earlier parent patent applications." [ECF No. 504-1 at 7]. The first parent application is U.S. Provisional Application No. 60/736,623, which was filed on November 14, 2005, and the second is U.S. Patent Application No. 12/093,638, which was filed under 35 U.S.C. § 371 as a U.S. national stage entry of International Patent Application No. PCT/IB2006/003181, which, in turn, was filed on November 2, 2006. [Id.]. This procedural history matters here because the effective filing date of an "application that entered the national stage under 35 U.S.C. § 371 is the international filing date." Manual of Patent Examining Procedure § 2139.01. Therefore, although the Patents-in-Suit claim priority to the 2005 application, their effective filing date is November 2, 2006.

Adding yet another level of complexity to this analysis, Teva stated in its first supplemental responses to Lilly's first set of interrogatories that the Patents-in-Suit were "constructively reduced to practice as of . . . November 14, 2005." [ECF No. 486-17 at 4]. Nevertheless, Lilly has cited no authority for the proposition that the date an invention is constructively reduced to practice can replace the invention's effective filing date, and the Court is similarly unaware of authority to support that conclusion. Rather, it seems that the "effective filing date" and the date an invention is constructively reduced to practice are distinct, but only the former is relevant to identifying the scope of prior art. See 35 U.S.C. § 102(a)(1); see also Ariad, 598 F.3d at 1351 ("[T]he test for sufficiency is whether the disclosure of the application

15

relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter of the filing date.") (citation omitted).

Therefore, because the Patents-in-Suit effective filing date is November 2, 2006, Bergerot qualifies as prior art. Lilly's arguments that the article should be excluded because it was produced just before the close of discovery and because Teva did not supplement its interrogatory responses to identify Bergerot as support for the validity of its asserted claims are also unavailing. The first argument fails because the late production of the article was a result of Lilly not serving document subpoenas on the named inventors until May 2021. The second argument fares no better because the Court agrees that even if the article is responsive to Lilly's interrogatories, Bergerot and its intended use was "otherwise made known" to Lilly during the course of discovery, thus satisfying Teva's disclosure obligations pursuant to Fed. R. Civ. P. 26(e).

Accordingly, Lilly's motion, [ECF No. 474], is DENIED.

Q.     **ECF No. 476: Lilly's MIL No. 3 Regarding the Presumption of Validity**

Lilly asks the Court to prohibit Teva from referencing the "presumption of validity" with regard to the Patents-in-Suit. Although Lilly states that courts "routinely preclude parties from referring to the statutory 'presumption of validity' during trial[,]" this Court notes that several courts have reached opposite conclusions on this point. Like defendants in prior cases, Lilly argues that reference to the statutory presumption of validity risks confusing the jury and that the issue is more properly put before the jury by the Court when it is instructing jurors on the law at the close of the evidence.

The statutory presumption of a patent's validity "is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence." Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1258–59 (Fed. Cir. 2004). Additionally, the Federal Circuit has

16

held that a district court commits no error in declining to instruct the jury on the presumption of validity, as long as it instructs the jury on the proper burden of proof: that invalidity must be proven by clear and convincing evidence.  Id. at 1259; see also BNJ Leasing, Inc. v. Portabull Fuel Service, LLC, No. 19-cv-156, 2022 WL 892747, at *8 (S.D. Miss. Mar. 25, 2022).  In light of the foregoing, the Court agrees with Federal Circuit Judge Bryson's reasoning that "the use of the phrase 'presumption of validity' would add little to the jury's understanding of the burden of proof on the validity issues[]" and may in fact confuse the jury."  Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co., 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017). Accordingly, Lilly's motion, [ECF No. 476], is GRANTED.

### R.     ECF No. 477: Lilly's MIL No. 4 Regarding Advice of Counsel

Pursuant to 35 U.S.C. § 298, "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."  Lilly avers that, at trial, it will not rely on advice of counsel as evidence that Lilly had a good faith subjective believe in its defenses and therefore asks the Court to enter an order barring Teva from introducing evidence related to Lilly's alleged failure to obtain advice of counsel with respect to the Patents-in-Suit.  [ECF No. 477 at 2].  Teva does not appear to argue that it intends to offer evidence that Lilly did not seek advice of counsel.  Instead, it points to Lilly's intent to rely on its institution of IPR proceedings as evidence of its good faith belief in its defenses, and argues that the filing of those petitions were necessarily a product and result of the advice of counsel.  In other words, Teva argues that Lilly is trying to use the fact that it filed IPR petitions as a backhanded way to communicate to the jury that its counsel believed the Patents-in-Suit were

invalid while simultaneously avoiding procedural rules that would require Lilly to disclose the legal advice it received. To the extent the motion seeks to preclude Teva from introducing evidence that Lilly failed to obtain advice of counsel, it is DENIED as moot because Teva is in fact arguing the opposite—that Lilly did obtain advice of counsel, is relying on that advice, and thus has inappropriately withheld the advice it received. Issues regarding the advice of counsel may be raised at trial if warranted.

### S. ECF No. 478: Lilly's MIL No. 5 Regarding Foreign Proceedings

Lilly requests that the Court bar Teva from introducing arguments, evidence, and/or testimony regarding the outcome of prior foreign proceedings between the parties, arguing that it is irrelevant to the willful infringement analysis and will serve to confuse and prejudice the jury. [ECF No. 478 at 2]. Teva disagrees and argues, in part, that (1) foreign proceedings can be admissible as evidence of pre-suit knowledge, [ECF No. 507-1 at 4]; (2) that if Lilly is permitted to rely on prior litigation to demonstrate its good faith subjective belief of invalidity, then "the outcome of the related European litigation is relevant circumstantial evidence tending to disprove that the mere assertion of litigation defenses demonstrates a subjective belief in non-infringement and invalidity[,]" [id. at 5]; and (3) it should be able to introduce evidence related to a foreign settlement and license agreement to support its damages claim.

Although evidence regarding the foreign proceedings has relevance as evidence of pre-suit knowledge, that relevance is minimal as Teva does not appear to be alleging pre-suit willful infringement, see [ECF No. 395 ¶¶ 90–91], and is far outweighed by the danger of confusion and prejudice resulting from the discussion of foreign patents, which are subject to foreign laws that are inapplicable to the Patents-in-Suit. However, the Court cannot conclude, prior to the full record being developed at trial, whether aspects of the foreign proceedings may be relevant and

admissible in response to the assertion of an affirmative defense by Lilly regarding its subjective belief of invalidity or in the context of damages. The Court thus finds that any categorial ruling is premature and Lilly's motion, [ECF No. 478], is DENIED with leave to renew at trial as appropriate.

    **T.**    **ECF No. 479: Lilly's MIL No. 6 to Preclude Evidence Regarding the Prevalence of Migraine Encountered In Clinical Practice**

Lilly submits that the Court should preclude Teva from introducing argument, evidence, or testimony regarding either the prevalence of migraine encountered in clinical practice or whether migraine is representative of the headaches that a POSA would encounter in clinical practice, arguing that the purported prevalence of migraine is not supported by the proper level of skill in the art and that the representativeness of migraine is irrelevant. [ECF No. 479 at 5–7]. First, the Court finds that the representativeness of migraine is relevant, at minimum, to the enablement inquiry. It seems that Lilly may argue that the full scope of the asserted claims is not described or enabled because there are types of headaches that a POSA would not expect to respond to anti-CGRP antibody treatment, and Teva will counter by arguing, in part, that the claims are enabled because "upwards of 90%" of the headaches encountered in the clinical setting are migraine. [ECF No. 508 at 5–6]. Second, the Court finds that the evidence supporting the purported prevalence of migraine that Lilly seeks to exclude—in particular Lipton 2001 and Tepper 2004—are admissible to the extent that Teva's experts relied on that evidence in drawing their conclusions. In light of the foregoing, Lilly's motion is DENIED.

    **U.**    **ECF No. 480: Lilly's MIL No. 7 Regarding Antibody Pharmacokinetics**

Lilly seeks to have Teva precluded from offering arguments, evidence, or testimony related to antibody pharmacokinetics. [ECF No. 480 at 2]. Pharmacokinetics "refers to the effect the body has on a drug (e.g., an antibody) after it is administered to a patient." [ECF No.

368-19 ¶ 33 n.6 (Dr. Hale's responsive expert report)]. This is an expansive concept with undefined borders, and the Court finds that it would be premature to categorically bar Teva from introducing evidence that relates to it. Lilly's motion is therefore DENIED with leave to renew at trial.

## II. CONCLUSION

Accordingly, for the reasons set forth above, these motions *in limine* are resolved as follows:

- Teva's MIL No. 12 is GRANTED;
- Teva's MIL Nos. 2, 4, and 10 are GRANTED in part and DENIED in part;
- Teva's MIL No. 1, 3, 5, 6, 7, 8, 9, 11, 13 and 14 are DENIED;
- Lilly's MIL No. 3, [ECF No. 476], is GRANTED; and
- Lilly's MIL Nos. 1, 2, 4, 5, 6 and 7, [ECF Nos. 472, 474, 477, 478, 479, and 480], are DENIED.

**SO ORDERED.**

October 17, 2022                                             /s/ Allison D. Burroughs
                                                                                ALLISON D. BURROUGHS
                                                                                U.S. DISTRICT JUDGE